■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RAYMOND SMITH, Appellant.—Appeal from a judgment of the County Court of Albany County, rendered March 15, 1976, upon a verdict convicting defendant of the crime of rape in the first degree. Defendant was convicted of the crime of rape in the first degree (Penal Law, § 130.35, subd 1), after a lengthy trial, as the result of an incident which occurred in the early morning of August 23, 1975. The complainant testified to a consummated rape committed by the defendant. The defense was consent. Since there were no witnesses to the incident, the jury was confronted primarily with an issue of credibility. The most important question in this case concerns the propriety of a search of a vehicle allegedly used in the commission of the crime. Relying primarily upon *Coolidge v New Hampshire* (403 US 443), the defendant contends that the search conducted by the police was illegal, that certain evidence obtained as a result of the search was improperly admitted into evidence and defendant is, therefore, entitled to a new trial. Following the incident, the defendant drove the complainant to her home. The police were then notified of the incident and given the name and place of work of the defendant. They were also informed by the complainant that she had left a bracelet and scarf in the car, both objects having been pushed "down into the seat", and that she had made some scuff marks inside the vehicle as a result of the struggle. After having ascertained defendant's address, the police proceeded to his residence. The vehicle used in the course of the commission of the crime was parked in the driveway. "Before going up to the house itself", at approximately 4:30 A.M., one of the police officers testified that he "looked in through the window on the driver's side with [his] flashlight and * * * noticed a piece of material; it looked like a scarf and it was colored brown and yellow". The police officer testified that he observed what he believed to be scuff marks on the passenger door. The defendant was then arrested at the house. Approximately half an hour later, the car was towed to the police station, where a search revealed the scarf, bracelet and scuff marks. The following morning at 9:00 another officer conducted a further examination of the vehicle which revealed additional evidence. We conclude that, under all of the circumstances herein, the searches conducted of the said vehicle were reasonable. At the time the police officers approached the vehicle, they were confronted with the following: A recounting by the victim of a very recent violent crime; a name and description of the alleged perpetrator, a description of the vehicle in which the crime had occurred and of certain objects located therein; the fact that the alleged assailant had removed himself far from the scene of

the crime; the possibility that the suspect was inside the house on the property where the car was parked; and, at least the chance that he would seek to destroy evidence and/or to avoid apprehension. We hold that the initial visual search of the automobile was justified because of the exigent circumstances. In *People v Singleteary* (35 NY2d 528), the police arrived promptly at the scene where two elderly persons had been mugged. They were told by neighbors that three men had been observed leaving a nearby unattended vehicle, on a public street, and proceeding in the direction of the victims' residence. The police had previous information linking the defendant to similar crimes and also had discovered that the license on the vehicle had been assigned to a car registered to defendant's wife. Using a flashlight the police peered through the windows and observed various incriminating objects. No warrant had been obtained. In upholding the search the Court of Appeals stated: "The reason for haste in searching the automobile was the urgency in identifying the culprit or culprits. They had fled the scene of the crimes and successful flight was a high likelihood * * * The search and seizure without a warrant were not only reasonable, but mandatory on police investigating crimes involving public safety and the lives and physical welfare of the victims. For the police to have done less would have been misfeasance * * * There are classic categorical exceptions permitting search without a warrant * * * There is, finally, the instance of search and seizure of an automobile based on exigency provided there is probable cause" *(People v Singleteary, supra,* pp 531-532). The right of the police to conduct a warrantless visual search of an automobile during the course of an investigation, under similarly exigent circumstances, was also recognized by the Court of Appeals in *People v Brosnan* (32 NY2d 254). We find the circumstances in the instant case to be no less exigent than those in *Singleteary* and *Brosnan,* and we conclude that the initial visual search of the said automobile without a warrant was "not only reasonable, but mandatory" *(People v Singleteary, supra,* p 531). As noted above the police first approached the vehicle in question at approximately 4:30 A.M. Subsequent searches were conducted at the police station after defendant's arrest, approximately half an hour later and again at 9:00 A.M. The Court of Appeals has stated, in respect to such a "delayed search" that "[I]t is well established that once the police have lawfully taken possession of an arrested person's property, especially where there is knowledge or probable cause that it contains contraband or evidence of the crime, they have the right to examine it—to search it—within a reasonable time and at a reasonably convenient place for such contraband or other evidence of the crime for which the arrest was made" *(People v Fustanio,* 35 NY2d 196, 199; see, also, *Chambers v Maroney,* 399 US 42; *People v Brosnan, supra; People v Hartford,* 50 AD2d 1054). *Coolidge v New Hampshire (supra),* upon which the defendant so heavily relies, is readily distinguishable because of the absence of exigent circumstances at the time of the search of the defendant's vehicle which was held to be illegal. In *Coolidge* the defendant was first questioned by the police about a murder on January 28, 1964. He voluntarily took a lie detector test on February 2. As the investigation continued, he was finally arrested in his house on February 19. The car in question, parked in defendant's driveway at the time of his arrest, was towed to the police station, where on February 21 and on two occasions the next year it was searched. After ruling that the search warrant was invalid, the court held that the searches could not be upheld under any of the theories authorizing warrantless searches. The following language is important in comparing *Coolidge* to the instant case: "In this case, the police had

known for some time of the probable role of the Pontiac car in the crime. Coolidge was aware that he was a suspect in the Mason murder, but he had been extremely cooperative throughout the investigation, and there was no indication that he meant to flee. He had already had ample opportunity to destroy any evidence he thought incriminating. There is no suggestion that, on the night in question, the car was being used for any illegal purpose, and it was regularly parked in the driveway of his house. The opportunity for search was thus hardly 'fleeting' " *(Coolidge v New Hampshire, supra,* p 460). In sharp contrast to the instant case, in *Coolidge* "Since the police knew of the presence of the automobile and planned all along to seize it, there was no 'exigent circumstance' to justify their failure to obtain a warrant" (p 478). *People v Spinelli* (35 NY2d 77), a case largely based upon *Coolidge,* is equally distinguishable. In *Spinelli* the police seized on defendant's premises two stolen vehicles "which had been observed throughout the prior five-month period" (p 79). The Court of Appeals held that "The crux then is that there was ample time for the law enforcement officials to secure a warrant in order to make this significant intrusion onto defendant's premises" (p 81). We have concluded that there was no such "ample time" in this case. Although both *Coolidge* and *Spinelli* were cases in which searches and seizures of vehicles on private property were found to be illegal and although we agree that "there is a significant constitutional difference between stopping, seizing, and searching a car on the open highway, and entering private property to seize and search an unoccupied, parked vehicle not then being used for any illegal purpose" *(Coolidge v New Hampshire, supra,* p 463, n 20), we remain of the view that, under sufficiently exigent circumstances, such a warrantless search of a vehicle on private property is proper. Finally, as noted above, the sole defense in the case was consent. The primary effect of the evidence which, as alleged by defendant, was the subject of an illegal search and seizure, was on the issue of credibility. Even if we were to agree with defendant's contentions on this issue, we would be of the view that the effect of the evidence, in the context of the entire trial and the overwhelming evidence of guilt otherwise presented by this record, would be insufficient to constitute grounds for reversal (see *People v Crimmins,* 36 NY2d 230). The remaining issues warrant little comment. Defendant's contention that the application of CPL 60.42 restricting the admissibility of evidence of the victim's sexual conduct to his case violates the ex post facto clause of the constitution is without merit *(People v Patno,* 55 AD2d 965). Nor is there merit to his argument that his right to confrontation was violated by the granting by the trial court of a motion to redact from a hospital record admitted into evidence a statement that complainant was on birth control pills. We find no merit to the claim that the trial was so permeated by the prejudicial and inflammatory statements of the District Attorney that defendant was denied a fair trial. We cannot say that the trial court abused its discretion in imposing a sentence with a maximum of 20 years and no minimum, within the 25-year allowable maximum for a class B felony (Penal Law, § 70.00, subd 2, par [b]), in view of the violent rape and beating of the young victim *(People v Finke,* 51 AD2d 1089). Judgment affirmed. Sweeney, J. P., Kane, Mahoney, Main and Larkin, JJ., concur.